UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CONNIE R. PRATT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:17-cv-311 |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Deputy Commissioner for Operations, | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Connie R. Pratt, on July 21, 2017. For the following reasons, the decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, Connie R. Pratt, filed an application for Disability Insurance Benefits on March 17, 2014, alleging a disability onset date of December 10, 2013. (Tr. 21). The Disability Determination Bureau denied Pratt's application on May 1, 2014, and again upon reconsideration on September 5, 2014. (Tr. 21). Pratt subsequently filed a timely request for a hearing on October 21, 2014. (Tr. 21). A hearing was held on November 21, 2016, before Administrative Law Judge (ALJ) William E. Sampson, and the ALJ issued an unfavorable decision on December 14, 2016. (Tr. 21-29). Vocational Expert (VE) Leonard M. Fisher testified at the hearing. (Tr. 21). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-7).

Pratt met the insured status requirements of the Social Security Act through December 31, 2017. (Tr. 23). On December 14, 2016, the ALJ issued an unfavorable decision and made

findings as to each of the steps in the five-step sequential analysis. (Tr. 21-29). At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Pratt had not engaged in substantial gainful activity since December 10, 2013, the alleged onset date. (Tr. 23).

At step two, the ALJ determined that Pratt had the following severe impairments: degenerative disc disease of the lumbar spine status post-surgery, migraines, and obesity. (Tr. 23). The ALJ considered Pratt's mental impairment of major depressive disorder, but found that it did not cause more than minimal limitation in Pratt's ability to perform basic work activities, and therefore was considered non-severe. (Tr. 24). The ALJ considered the paragraph B criteria for mental impairments, which required at least two of the following:

> marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

(Tr. 24).

The ALJ determined that Pratt had mild limitations in activities of daily living, social functioning, and concentration, persistence, or pace. (Tr. 24). Also, the ALJ found that Pratt did not experience any episodes of decompensation which would have been of extended duration. (Tr. 24). The ALJ considered that Pratt was never psychiatrically hospitalized nor did she experience significant deficits in adaptive functioning. (Tr. 25). Because Pratt's limitations caused no more than "mild" limitation and "no" episodes of decompensation which had been of extended duration, the ALJ found that her medically determinable mental impairments were non-severe. (Tr. 25).

At step three, the ALJ concluded that Pratt did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20

2

C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 25). The ALJ considered Pratt's impairments against the criteria set forth in Listings 1.02, 1.04, 11.00 *et. seq.,* 12.04, and Social Security Ruling 02-1p. (Tr. 25). The ALJ indicated that no acceptable medical source had mentioned findings equivalent in severity to the criteria of any listed impairment, either individually or in combination. (Tr. 25).

After consideration of the entire record, the ALJ then assessed Pratt's residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity (RFC) to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant could never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; avoid concentrated exposure to extreme cold and hazards, such as dangerous moving machinery and unprotected heights.

(Tr. 25). The ALJ explained that in considering Pratt's symptoms he followed a two-step process. (Tr. 25). First, he determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Pratt's pain or other symptoms. (Tr. 25). Then, he evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Pratt's functioning. (Tr. 26).

Pratt testified that she had back surgery in April of 2015. (Tr. 26). She indicated that she drove only once a week because she was embarrassed about going out due to her weight. (Tr. 26). Pratt tried to increase her physical activity, but she reported that it resulted in back spasms. (Tr. 26). Pratt reported that her back spasms occurred on the left side and that she still was experiencing pain after her surgery. (Tr. 26). Pratt started using a cane the week of the hearing. (Tr. 26). However, she stated that at home she used the walls, rather than a cane. (Tr. 26). She

3

alleged that she only could stand 10-15 minutes; sit for 30 minutes before needing to walk around; and lift/carry between 5 and 10 pounds. (Tr. 26).

Pratt indicated that her normal day consisted of cooking, washing dishes, and doing laundry, but that she was unable to do laundry downstairs. (Tr. 26). Pratt reported that she could sit half a day and that she could stay on her feet for the other half. (Tr. 26). She reported that she needed to lie down because of back spasms about 2-3 times a week for 1-1.5 hours. (Tr. 26). However, the ALJ noted that Pratt indicated that she was unable to do her past job because she could not sit the whole time. (Tr. 26). Also, she reported that she experienced migraine headaches and that the headaches affected her concentration. (Tr. 26). However, the ALJ noted that she adequately followed along at the hearing. (Tr. 26). The ALJ determined that Pratt's medically determinable impairments reasonably could have been expected to cause the alleged symptoms. (Tr. 26). However, her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence. (Tr. 26).

The ALJ noted that Pratt had a history of back pain complaints. (Tr. 26). In 2014, Pratt underwent an EMG/NCS that showed acute lumbosacral radiculopathy. (Tr. 26). Also, she underwent a lumbar spine MRI that revealed a disc bulge at L4-5 and L5-S1 resulting in neuroforaminal stenosis at L4-5 and compressing S1 nerve root. (Tr. 26). However, on physical examination she had a normal gait and strength with some tenderness in the lower back and decreased sensation in the lateral aspect of the left lower leg and foot in a patchy distribution. (Tr. 27). Also in 2014, the ALJ noted that Pratt participated in physical therapy and displayed some improvement in pain, lumbar range of motion, and increased lower extremity strength. (Tr. 27).

A 2015 lumbar spine MRI demonstrated facet arthritis at L4-5, severe thecal sac stenosis at L3-4, and a disc protrusion with nerve root impingement on the right. (Tr. 27). Pratt underwent surgery in April/May of 2015. (Tr. 27). The ALJ found that in late 2015 Pratt had intact sensation, normal motor activity, normal deep tendon reflexes, and normal gait and station. (Tr. 27). The ALJ considered that prior to Pratt's March of 2016 visit with a pain management doctor she had not been seen for 17 months, which the ALJ found suggested improvement post back surgery. (Tr. 27). Also, the ALJ noted that Pratt reported doing all of her normal activities of daily living and that she did not require daily pain medications. (Tr. 27).

The ALJ indicated that he considered all of Pratt's impairments, symptoms, clinical signs and diagnostic tests, including notes of improvement and some exacerbations when limiting her to less than full range of sedentary work. (Tr. 27). The ALJ noted that a sit/stand option was unnecessary because there was evidence that Pratt's straight leg raising was negative and that her condition improved with some treatment modalities, which included physical therapy, surgery, and more recent injection therapy. (Tr. 27). Also, the ALJ rejected Pratt's need to lie down during the day because no regular documentation in the medical progress notes suggested that she was doing that or that she needed to do so. (Tr. 27).

Pratt complained of migraine headaches. (Tr. 28). However, the ALJ noted that Pratt denied headaches in 2016 and that she never required hospitalization due to uncontrollable headaches/migraines. (Tr. 28). However, the ALJ accounted for Pratt's headaches/migraines by including some environmental limitations in the residual functional capacity. (Tr. 28).

As for the opinion evidence, the ALJ assigned some weight to the State agency medical consultant who found that Pratt was limited to light exertional level with occasional postural activities and avoiding concentrated exposure to extreme cold and hazards. (Tr. 28). Next, the

ALJ assigned little weight to Pratt's pain management doctor who opined that Pratt was unable to perform her job duties due to pain resulting in the need for frequent position changes. (Tr. 28). Pratt's spinal doctor determined that Pratt could sit for 4 hours in a workday and stand/walk for 2 hours, avoid continuous sitting, lift/carry a maximum of 10-20 pounds. (Tr. 28). The ALJ assigned little weight to the spinal doctor's opinion because the findings were not consistent with the periods of improvement noted in the record. (Tr. 28).

At step four, the ALJ found that Pratt was able to perform her past relevant work as an account payable bookkeeper. (Tr. 29). The ALJ found that the work did not require the performance of work-related activities precluded by Pratt's RFC. (Tr. 29). The ALJ found that Pratt had not been under a disability, as defined in the Social Security Act, from December 10, 2013 through the date of this decision, December 14, 2016. (Tr. 29).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014); *Bates v. Colvin*, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported his decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see Bates*, 736 F.3d at 1098. A court must affirm an ALJ's

decision if the ALJ supported his findings with substantial evidence and if there have been no errors of law. ***Roddy v. Astrue***, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." ***Lopez ex rel Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § 404.1520**. The ALJ first considers whether the claimant is presently employed and "doing . . . substantial gainful activity." **20 C.F.R. § 404.1520(b)**. If she is, the claimant is not disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. § 404.1520(c)**; *see* ***Williams v. Colvin***, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past

relevant work, she will be found not disabled. **20 C.F.R. § 404.1520(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f)**.

Pratt has requested that the court reverse the ALJ's decision and award benefits, or in the alternative remand the matter for additional proceedings. In her appeal, Pratt has argued that the ALJ erred in: (1) failing to properly weigh the medical opinion evidence in determining her residual functional capacity; (2) finding that she did not have a severe mental impairment; (3) failing to properly evaluate her testimony; and (4) failing to consider her obesity.

Pratt has argued that the ALJ erred in assigning little weight to the opinions of her treating neurologist, Dr. Mohammad S. Shukairy. A treating source's opinion is entitled to controlling weight if the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. **20 C.F.R. § 404.1527(c)(2)**; *see* **Bates v. Colvin**, 736 F.3d 1093, 1099 (7th Cir. 2013); **Punzio v. Astrue**, 630 F.3d 704, 710 (7th Cir. 2011); **Schmidt v. Astrue**, 496 F.3d 833, 842 (7th Cir. 2007). The ALJ must "minimally articulate his reasons for crediting or rejecting evidence of disability." ***Clifford v. Apfel***, 227 F.3d 863, 870 (7th Cir. 2000) (quoting ***Scivally v. Sullivan***, 966 F.2d 1070, 1076 (7th Cir. 1992)).

"[O]nce well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight and becomes just one more piece of evidence

for the ALJ to consider." *Bates*, 736 F.3d at 1100. Controlling weight need not be given when a physician's opinions are inconsistent with his treatment notes or are contradicted by substantial evidence in the record, including the claimant's own testimony. *Schmidt*, 496 F.3d at 842 ("An ALJ thus may discount a treating physician's medical opinion if the opinion is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability."); *see, e.g.*, *Latkowski v. Barnhart*, 93 F. App'x 963, 970-71 (7th Cir. 2004); *Jacoby v. Barnhart*, 93 F. App'x 939, 942 (7th Cir. 2004). If the ALJ was unable to discern the basis for the treating physician's determination, the ALJ must solicit additional information. *Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014) (citing *Similia v. Astrue*, 573 F.3d 503, 514 (7th Cir. 2009)). Ultimately, the weight accorded a treating physician's opinion must balance all the circumstances, with recognition that, while a treating physician "has spent more time with the claimant," the treating physician may also "bend over backwards to assist a patient in obtaining benefits . . . [and] is often not a specialist in the patient's ailments, as the other physicians who give evidence in a disability case usually are." *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006) (internal citations omitted); *see Punzio*, 630 F.3d at 713.

If the ALJ decides that the treating physician's opinion should not be given controlling weight, the ALJ is "required by regulation to consider certain factors in order to decide how much weight to give the opinion." *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014). These factors are set forth in **20 C.F.R. § 404.1527(c)(1)-(5)** and include: 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) supportability; 4) consistency with the record as a whole; and 5) whether the treating physician was a specialist in the relevant area.

The ALJ's decision indicated that he assigned little weight to the opinion of treating neurologist, Dr. Shukairy. (Tr. 28). Dr. Shukairy completed a Spinal Impairment Questionnaire on April 19, 2016. (Tr. 581). Dr. Shukairy found that Pratt could sit for 4 hours total and stand/walk for 2 hours in an 8-hour workday. (Tr. 583). Also, she must avoid continuous sitting during a workday, but she does not need to elevate her legs. (Tr. 584). Pratt could lift/carry a maximum of 10-20 pounds, and no cane was medically necessary. (Tr. 584). Finally, Dr. Shukairy determined that Pratt's concentration/attention would be interrupted occasionally and that unscheduled breaks would be needed. (Tr. 585). The ALJ indicated that Dr. Shukairy's opinions were issued more recently, yet they were not consistent with the periods of improvement noted in the record. (Tr. 28). However, Pratt contends that Dr. Shukairy's April 2016 findings indicated that the symptoms and related limitations applied as far back as June 29, 2013. (Tr. 586).

An ALJ must first determine whether the treating source's opinion is entitled to controlling weight in consideration of supportability and consistency with the record. If the ALJ finds the opinion is lacking in either of these aspects, the ALJ must proceed to step two, where he applies the checklist of factors articulated in 20 C.F.R. § 404.1527. The ALJ must use these factors to determine exactly what weight to assign to the opinion. This process consists of two "separate and distinct steps." ***Williams v. Berryhill***, 2018 WL 264201, at *3 (N.D. Ill. Jan. 2, 2018). The court acknowledges that an ALJ need not explicitly mention every factor, so long as his decision shows that he "was aware of and considered many of the factors." ***Schreiber v. Colvin***, 519 F. App'x 951, 959 (7th Cir. 2013).

As indicated by the Commissioner, the ALJ discounted Dr. Shukairy's opinion, in part, because it was not consistent with the longitudinal record, which showed that Pratt had improved

with treatment. The rationale for according controlling weight is that a treating source may provide a longitudinal and detailed picture of a claimant's impairments and may bring a unique perspective to the medical evidence that may not be shown by objective medical findings alone or reports from individual examinations. **20 C.F.R. § 404.1527(c)(2).** Pratt acknowledges that she had some periods of improvement with physical therapy, spinal surgery, and a spinal injection. However, "there can be a great distance between a patient who responds to treatment and one who is able to enter the workforce . . ." ***Scott v. Astrue***, 647 F.3d 734, 739-40 (7th Cir. 2011). Moreover, the ALJ has failed to consider the length of the treatment relationship, the nature and extent of that treatment relationship, and that Dr. Shukairy was a neurosurgeon, all factors that weighed heavily in Dr. Shukairy's favor pursuant to 20 C.F.R. § 404.1527.

Also, the ALJ assigned some weight to the State agency medical consultants' opinion that Pratt was limited to light exertional level with occasional postural activities and avoiding concentrated exposure to extreme cold and hazards. (Tr. 28). However, the ALJ noted that due to Pratt's back pain with occasional positive physical examination signs, surgery in 2015, and some left lower extremity pain/fluctuating sensation issues, he found that a sedentary RFC was more appropriate. (Tr. 28). The ALJ has assigned more weight to the State agency medical consultant's opinion than Pratt's treating neurologist, Dr. Shukairy.

Generally, an ALJ affords more weight to the opinion of an examining source than the opinion of a non-examining source, but the ultimate weight given depends on the opinion's consistency with the objective medical evidence, the quality of the explanation, and the source's specialty. ***Givens v. Colvin***, 551 F. App'x 855, 860 (7th Cir. 2013); **20 C.F.R. § 404.1527(c)**. "An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself,

11

suffice." ***Gudgel v. Barnhart***, 345 F.3d 467, 470 (7th Cir. 2003). An ALJ may give less weight to an examining source's opinion when it appears to rely heavily on the claimant's subjective complaints. ***Givens***, 551 F. App'x at 861; *see* **20 C.F.R. § 404.1527(c)(3)** ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give the opinion. The better explanation a source provides for an opinion the more weight we will give that opinion."); ***Filus v. Astrue***, 694 F.3d 863, 868 (7th Cir. 2012).

The State agency consultants reviewed the medical evidence on April 28, 2014 and August 29, 2014, approximately a year prior to Pratt's back surgery and over two years before the ALJ's unfavorable decision. (Tr. 91-101). Thus, the opinions of the non-examining consultants were based on an undeveloped record. The opinions of State agency consultants can be given weight only to the extent they are supported by evidence in the record. *See* **20 C.F.R. § 404.1527(c)(3)** (stating that "because nonexamining sources have no examining or treating relationship with [Plaintiff], the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their medical opinions."). An ALJ would be hard-pressed to justify casting aside a treating source opinion in favor of two year old state agency opinions. *See* ***Jelinek v. Astrue,*** 662 F.3d 805, 812 (7th Cir. 2011).

On remand, the ALJ is directed to thoroughly address the medical evidence in the record, including properly weighing the reports of examining neurologist, Dr. Shukairy and the State agency medical consultants in accordance with the regulations, and to obtain additional information as needed. *See, e.g.,* ***Barnett v. Barnhart***, 381 F.3d 664, 669 (7th Cir. 2004) ("An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable.").

Next, Pratt has argued that the ALJ erred when he found that her impairment of major depressive disorder was not severe. At step two, the claimant has the burden to establish that she has a severe impairment. *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010). A severe impairment is an "impairment or combination of impairments which significantly limits [one's] physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 404.1521**; *Castile*, 617 F.3d at 926. Basic work activities include "[u]nderstanding, carrying out, and remembering simple instructions," "[r]esponding appropriately" to supervisors and co-workers, and "[d]ealing with changes in a routine work setting." **20 C.F.R. § 404.1521;** *Meuser v. Colvin,* 838 F.3d 905, 910 (7th Cir. 2016). "[A]n impairment that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." SSR 96-3p, 1996 WL 374181, at *1. Courts have characterized step two as a *de minimis* screening device that disposes of groundless claims. ***Johnson v. Sullivan***, 922 F.2d 346, 347 (7th Cir. 1990); ***Elkins v. Astrue***, 2009 WL 1124963, at *8 (S.D. Ind. April 24, 2009) (citing ***Webb v. Barnhart***, 433 F.3d 683, 688 (9th Cir. 2005)).

Pratt was diagnosed with major depressive disorder, moderate and recurrent in 2014. The ALJ indicated that Pratt's mini-mental status examinations during treatment for her physical impairments found that her attention and concentration were typically intact. (Tr. 24). The ALJ found that Pratt's major depressive disorder did not cause more than minimal limitation in her ability to perform basic mental work activities, and therefore was non-severe. (Tr. 24). The ALJ assigned great weight to the State agency opinions that Pratt's major depressive disorder was non-severe because she had not received specialized treatment for her mental health and most of her mini-mental status examinations were normal. (Tr. 24). The ALJ determined that Pratt had mild limitations in activities of daily living, social functioning, concentration, persistence, or

13

pace, and that she had not experienced any episodes of decompensation which were of extended duration. (Tr. 24). Because Pratt's limitations caused no more than "mild" limitation and "no" episodes of decompensation which have been of extended duration, the ALJ found that her medically determinable mental impairments were non-severe. (Tr. 25).

Pratt contends that the ALJ's finding that she had a medically determinable impairment of "major depressive disorder" standing alone contradicts the ALJ's finding that she did not have a severe mental impairment. Moreover, Pratt has argued that the non-examining psychologists reviewed the file on April 29, 2014, and September 2, 2014, prior to her beginning psychiatric treatment. (Tr. 88, 98). Also, contrary to the ALJ's mental status findings Pratt's treating psychiatrist, Dr. Daniel Kim, M.D., found that Pratt had depressed mood, feelings of guilt and worthlessness, poor recent memory, anhedonia/pervasive loss of interest, appetite disturbances/weight change, decreased energy, and excessive sleep. (Tr. 707). Moreover, Pratt asserts that the ALJ's conclusion that she did not receive regular mental health treatment was contradicted by the record. Dr. Kim indicated that he had treated Pratt every three months between November 3, 2014 and June 13, 2016. (Tr. 706).

The Seventh Circuit reversed an ALJ's step-two finding of non-severe where the claimant had a diagnosis of "major depression, recurrent severe." ***O'Connor-Spinner v. Colvin***, 832 F.3d 690, 697 (7th Cir. 2016). In doing so, the court explained:

> "That determination is not supported by substantial evidence and, indeed, strikes us as nonsensical given that the diagnosis, *by definition*, reflects a practitioner's assessment that the patient suffers from 'clinically significant distress or impairment in social, occupational, or other important areas of functioning."

***O'Connor-Spinner,*** 832 F.3d at 697 (emphasis added) (quoting American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders* 679-80 (4th ed. Text Rev.

14

2000)). Similarly, the ALJ in that matter relied on two non-examining psychologists. However, the court notes that the non-examining psychologists in the instant matter had reviewed Pratt's file prior to her beginning psychiatric treatment.

In light of this Seventh Circuit precedent, the ALJ erred in finding her mental impairment non-severe at step two. However, "any error that an ALJ commits at step two is harmless as long as she goes on to consider the combined impact of a claimant's severe and non-severe impairments." **Loftis v. Berryhill**, 2017 WL 2311214, at *2 (N.D. Ill. May 26, 2017) (citing **Curvin v. Colvin**, 778 F.3d 645, 648-49 (7th Cir. 2015); *see also* **Denton v. Astrue**, 596 F.3d 419, 423 (7th Cir. 2010) ("A failure to fully consider the impact of non-severe impairments requires reversal."). The ALJ never mentioned Pratt's mental impairments again after step two. Therefore, there is no indication that the ALJ considered the impact of Pratt's mental impairments, even if non-severe, when assigning the RFC. **Rice v. Berryhill**, 2018 WL 2049931, at *5 (N.D. Ill. May 2, 2018) (finding that the ALJ's step-two determination that the claimant's major depression was non-severe was not a harmless screening error because the ALJ did not include any mental limitations in the RFC).

Moreover, the VE testified that if Pratt was as limited as found by the ALJ, but also was restricted to simple, repetitive, and routine tasks that could be learned within 30 days, she could not perform her past work and would have no transferable skills to other work. (Tr. 81). Therefore, the ALJ's error was not harmless, and the matter will be remanded on this issue. The ALJ should have incorporated Pratt's non-severe mental impairment into the RFC analysis. *See* **20 C.F.R. § 404.1545(a)(1)** ("We will assess your residual functional capacity based on *all* the relevant evidence in your case record.") (emphasis added). Because the RFC did

15

not adequately address Pratt's mental impairment at step two, remand is appropriate so that the ALJ can address the effects of her major depressive disorder in assessing the RFC.

Pratt has argued that the ALJ failed to properly evaluate her testimony. An ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. ***Shideler v. Astrue,*** 688 F.3d 306, 310-11 (7th Cir. 2012). Nevertheless, an ALJ must support his evaluation with specific reasons that are supported by the record. ***Pepper v. Colvin,*** 712 F.3d 351, 367 (7th Cir. 2013). On March 28, 2016, Social Security Ruling 16-3p became effective and issued new guidance regarding the evaluation of a disability claimant's statements about the intensity, persistence, and limiting effects of symptoms. *See* SSR 16-3p, 2016 WL 1237954 (Mar. 28, 2016). Under SSR 16-3p, an ALJ must assess the claimant's subjective symptoms rather than assessing his "credibility."

Under SSR 16-3, the ALJ first must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce her symptoms. SSR 16-3p, 2016 WL 1119029, at *2. Then, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 16-3p, 2016 WL 1119029, at *2. An individual's statements about the intensity and persistence of the pain may not be disregarded because they are not substantiated by objective medical evidence. SSR 16-3p, 2016 WL 1119029 at *5. In determining the ability of the claimant to perform work-related activities, the ALJ must consider the entire case record, and the decision must contain specific reasons for the finding. SSR 16-3p, 2016 WL 1119029, at *4, 9. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(i) The individual's daily activities;

(ii) Location, duration, frequency, and intensity of pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) Type, dosage, effectiveness, and side effects of any medication;

(v) Treatment, other than medication, for relief of pain or other symptoms;

(vi) Other measures taken to relieve pain or other symptoms;

(vii) Other factors concerning functional limitations due to pain or other symptoms.

*See* **20 C.F.R. § 404.1529(c)(3).**

The ALJ determined that Pratt's medically determinable impairments reasonably could have been expected to cause the alleged symptoms but that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence. (Tr. 26). The court finds that the ALJ's credibility determination provided specific reasons, and therefore was sufficiently specific and clearly articulated so the court could assess how he evaluated the symptoms. SSR 16-3p, 2016 WL 1119029, at *9.

Pratt has argued that the ALJ failed to consider her exemplary work history, which entitled her to substantial credibility. However, a good work history "is still just one factor among many, and it is not dispositive." ***Summers v. Berryhill***, 864 F.3d 523, 529 (7th Cir. 2017) (internal quotation marks and citation omitted); *see also* **20 C.F.R. § 404.1529(c)(3).** However, since this matter is being remanded on other issues, the ALJ may reconsider Pratt's subjective complaints.

Finally, Pratt contends that the ALJ failed to consider her obesity in making the RFC finding. If a claimant is obese, the ALJ must specifically address the "incremental effect" of

obesity on the claimant's limitations.  *Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005).  Ruling 02-1p provides that in evaluating obesity in assessing RFC, "[a]n assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment."  SSR 02-1p, 2002 WL 34686281, at *6 (Sept. 12, 2002).  Further, Ruling 02-1p explains that an ALJ's RFC determination must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.  SSR 02-1p, at *6 (citing SSR 96-8p).

Even if a claimant does not contend that obesity is one of his impairments, SSR 02-1p requires an ALJ to consider the effects of obesity on the claimant's other conditions.  However, failure to explicitly consider these effects can be "harmless error."  *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006).  Since the ALJ in *Prochaska* "sufficiently analyzed" the claimant's obesity (by implicitly considering the issue, in part by relying on medical documents that noted the claimant's height and weight), and because the claimant did not specify how obesity specifically impaired her work ability, the Seventh Circuit found that any error on the ALJ's part in not explicitly considering the claimant's obesity was harmless.  *Prochaska,* 454 F.3d at 737.

At step two, the ALJ found that Pratt's severe impairments included obesity.  (Tr. 23).  The ALJ acknowledged Pratt's testimony that she was 5'4 ½" tall and 275-280 pounds.  Also, the ALJ indicated that he considered all of Pratt's "impairments, symptoms, and clinical signs and diagnostic tests . . . when limiting the claimant to less than the full range of sedentary work." (Tr. 27).  Moreover, the ALJ in giving the State agency medical consultants' opinions some weight, he indicated that he agreed with the non-exertional limitations due to her back pain, obesity, and migraine headaches.  Pratt has not demonstrated that her obesity caused further limitations.  Therefore, any error on behalf of the ALJ to further explain why he found that

Pratt's obesity did not affect her ailments was harmless. *See* ***Skarbek v. Barnhart***, 390 F.3d 500, 504 (7th Cir. 2004) (ALJ's adoption of limitations suggested by doctors who were aware of claimant's obesity, plus claimant's failure in specifying how weight impaired the ability to work, was harmless error). However, on remand the ALJ may reconsider Pratt's obesity, singly and in combination, with her other impairments.

Pratt has requested that the court remand for an award of benefits. An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." ***Allord v. Astrue***, 631 F.3d 411, 415 (7th Cir. 2011). The Seventh Circuit has held that when an ALJ's decision is not supported by substantial evidence, the appropriate remedy is to remand for further proceedings unless the evidence before the court compels an award of benefits. ***Briscoe v. Barnhart***, 425 F.3d 345, 355 (7th Cir. 2005). The record here does not warrant an award of benefits.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED** for further proceedings consistent with this order.

ENTERED this 24th day of October, 2018.

/s/ Andrew P. Rodovich
United States Magistrate Judge